1   Elizabeth D. Tate AZ Bar No. 032659
2   Elizabeth D. Tate Attorney at Law
    2953 N. 48th Street
3   Phoenix, AZ 85016
    Telephone (602) 670-4653
4   Fax (480) 935-3746
5   Attorney for Plaintiff John Howard,
    Personal Representative for the Estate
6   Of Stanley Howard

7

8

9               **IN THE UNITED STATES DISTRICT COURT FOR THE**

10                          **DISTRICT OF ARIZONA**

11  The Estate of Stanley Howard, by)   Case No.:
    Personal Representative,          )
12  John Howard,                      )   **COMPLAINT**
                                      )
13               Plaintiff,           )   **JURY TRIAL DEMANDED**
                                      )
14  vs.                               )
                                      )
15                                    )
                                      )
16  City of  Phoenix, a municipal corporation)
    Sergeant  Jeremiah  Fiola  #8532,  in  )
17  individual capacity                )
    Officer  Rayonte  Benson  #10691,  in  )
18  individual capacity,              )
    Officer Ali Alkarawi #10780, in    )
19  his individual capacity,
    Officer Jennifer Rich #10171, in her
20  Individual capacity,

21

22                          Defendants.

23  _____

24

                                -1-

COMES NOW, Plaintiff, the Estate of Stanley Howard, by Personal Representative John Howard,  by and through their attorney of record, Elizabeth Tate, and hereby submits his  Complaint against Defendants, and each of them, and alleges as follows:

/ / /

/ / /

/ / /

## **NATURE OF THE ACTION**

1.     This is an action brought by Plaintiff for compensatory relief and damages against the City of Phoenix and its police officers, Sergeant Jeremiah Fiola, Officer Rayonte Benson, Officer Ali Alkarawi and Officer Jennifer Rich. These Defendants violated  Stanley Howard's, right to be free from excessive force under the   Fourth Amendment and Fourteenth Amendment under the U.S. Constitution, through 42 U.S.C. Section §1983 pursuant to an unconstitutional policy.

2.     The  City of Phoenix  also violated Stanley Howard's rights under the Americans with Disabilities Act, 42 U.S.C. § 12132 and  the Rehabilitation Act, 29 U.S.C. § 794 and 794a   when it shot and killed Stanley Howard, a disabled individual,  and failed accommodate Stanley Howard's disability.

**3.**    The City of Phoenix violated Stanley Howard's state law disability rights under the Arizona Civil Rights Act – Public Accommodations A.R.S 41-1492.02.

**4.**    All Defendants committed the state law civil torts of assault and battery, wrongful death, and negligence.

## **PARTIES, JURISDICTION AND VENUE**

**5.**    At all times relevant hereto to this action, Stanley Howard, was a single man living in Phoenix, Arizona. Stanley Howard suffered mental illness believed to be schizophrenia and major depression, both serious psychiatric disorders.

**6.**    His condition was chronic/permanent, and it limited, among other things, his ability to communicate and interact with other persons and periodically affected his will to live.

**7.**    Howard's disability was known by members of the City of Phoenix Police Department "COPPD", including Sergeant Fiola, Officer Benson, Officer Alkarawi and Officer Rich because Mr. Howard had been acting erratically and repeatedly calling 911 on the day of his shooting.

**8.**    Howard would call 911 and when police would arrive, Howard would deny calling them. During these encounters, Howard threatened to kill police officers and harmed himself.

**9.**     Howard had a record of impairment with COPPD with police officers having made prior visits to Howard's home to quell disturbances and perform wellness checks at the request of Mr. Howard's out-of-state family.

**10.**     Upon information and belief, always relevant hereto this action, Defendant Sergeant Jeremiah Fiola (hereinafter "Sergeant Fiola"), was a resident of Wadell, Arizona and engaged in a policy of excessive force and failed to accommodate Mr. Howard's disability, instead recklessly reacting in a display of excessive force to slay Howard.

**11.**     Upon information and belief, always relevant hereto this action, Defendant, Rayonte Benson (hereinafter "Officer Benson"), was a resident of Surprise, Arizona and engaged in a policy of excessive force failed to accommodate Mr. Howard's disability, instead recklessly reacting in a display of excessive force to slay Howard.

**12.**     Upon information and belief, always relevant hereto this action, Defendant Ali Alkarawi (hereinafter "Officer Alkarawi") was a resident of Peoria, Arizona and engaged in a policy of excessive force failed to accommodate Mr. Howard's disability, instead recklessly reacting in a display of excessive force to slay Howard.

**13.**     Upon information and belief, always relevant hereto this action, Defendant Jennifer Rich (hereinafter "Officer Rich") was a resident of Phoenix,

Arizona and engaged in a policy of excessive force failed to accommodate Mr. Howard's disability, instead recklessly reacting in a display of excessive force to slay Howard.

14.    Upon information and belief, always relevant hereto this action, the Defendant, City of Phoenix, is a municipal corporation that has a Police Department established for serving and protecting residents of Phoenix.

15.    The City of Phoenix is liable for the actions of its police officers, Defendants Sergeant Fiola, Officers Benson, Alkarawi and Rich, who violated Plaintiff's Fourth and Fourteenth Amendment rights and failed to accommodate Mr. Howard and recklessly killed Howard.

16.    The Defendant police officers were inadequately trained in affording citizens with disabilities their rights, to contact a crisis intervention team to take such persons to a hospital or facility for mental health treatment as needed by Howard.

17.    City of Phoenix has a wide policy of failing to train its officers to access mental health services for its mentally ill citizens, including a failure to train the named officer Defendants.

18.    The City of Phoenix policy of excessive force and discrimination was so well known and pervasive that the U.S. Justice Department launched an investigation into City of Phoenix's use of excessive force and discriminatory

practices on August 5, 2021, after Howard and previous others, were gunned down.

**19.**   City of Phoenix had a duty  under the Americans with Disabilities Act, Rehabilitation Act and Arizona Civil Rights Act as a public establishment, to make its services available to people with disabilities and to make reasonable accommodations for such persons.

**20.**   City of Phoenix receives financial assistance or funding from federal government  programs.

**21.**   All events alleged herein occurred within Maricopa County in the State of Arizona.

**22.**    This Court has personal jurisdiction over the parties based upon the foregoing facts.

**23.**    This Court has subject matter jurisdiction for all the claims herein because all arise from federal statutes, as provided by 28 U.S.C. 1331 and 28 U.S.C. 1343(a) (3,4). The Court has supplemental jurisdiction over Plaintiff's  state law claims under 28 U.S.C. 1367(a).

**24.**   This District Court (Phoenix Division) is the proper venue for this action pursuant to 28 U.S.C. 1391(b) (1,2) and 42 U.S.C. 2000e-5(f)(3).

## **FACTUAL ALLEGATIONS**

25.     On the evening of July 8, 2021, at around 9:00 p.m. Stanley Howard called COPPD's 911 to repeatedly ask for help. Mr. Howard used profanity and threatened to kill police officers over the phone. When police would arrive, Howard would deny calling for services.

26.     Mr. Howard's calls to 911 were angry and profane. The 911 operators understood that Howard was mentally ill and a danger to himself and others. The 911 operators coded Howard as a "218", which meant Howard was violently mentally ill.

27.     Despite coding Howard as a "218", the operators not address Mr. Howard's mental illness despite many opportunities. Operators could have routed Howard's calls to 911 a crisis counselor or dispatched as a crisis assessment team to Howard's home.

28.     Instead, the 911 operators permitted Mr. Howard to hang up without assisting Howard only for Mr. Howard to call 911 again.

29.     During one 911 call, Howard asked to speak with a male because he "hated" women. The operator disregarded Howard's request to speak with a male and routed Mr. Howard's call to her supervisor, a female.

30.     The female supervisor briefly spoke with Howard but offered no assistance to him. This was just another one of many opportunities COPPD had to accommodate Mr. Howard by having him speak with a crisis

assessment counselor or invoking a crisis assessment team go to Mr. Howard's home to transport Mr. Howard to a hospital or mental health facility.

31.     As the evening progressed, Howard continued to call 911. COPPD officers arrived at Howard's residence two times. On the first time, when police officers arrived,   Howard continued to display erratic behavior telling the officers that he did not call them when clearly he had.

32.     One officer came to Howard's front door briefly spoke to Howard and left with the other officers after Howard rebuffed her.

33.     When the officers left, Howard pounded his first on his front window and broke the window.  The officers observed that Howard broke the window but made no effort to help Howard, but left  Howard ranting,  raving and bleeding, alone in his home despite the officers  having the clear duty to help Howard.

34.     After breaking the window, Howard continued to  call 911 to ask  for help, telling the 911 operator that he cut himself  "in the place where you commit suicide". Despite Howard's clear suicidal ideations,  the 911 operator failed to put  a crisis counselor on the phone or to dispatch a crisis assessment team to Howard's residence.

35.     Instead, the operators dispatched the Defendants Sergeant Fiola, Officer Benson,  Officer Alkarawi and Officer Rich to  Howard's residence.

When these officers arrived,  it  was the second time police were at the Howard residence that night  having done nothing to help Howard earlier.

**36.**    When officers approached Howard's residence, they could observe Howard  through a window seated and agitated in his living room. Howard repeatedly demanded, in a voice that could be heard through his closed door, that  the Defendants to leave because he did not call them.

**37.**    Rather than deescalate the situation by leaving as Howard requested and dispatching a crisis assessment team, the Defendants   enflamed the situation by calling  out to Howard to engage Howard.

**38.**    While the officers spoke to Howard through his door, Howard got up from his living room  chair and opened his door, holding a large, plastic red water gun.  Howard then falsely claimed, "I've got a gun" when in actuality he held a plainly visible, large, red, water gun.

**39.**    Defendants yelled "Drop the gun! Don't do it!" while simultaneously opening fire on Howard  and shooting Howard more than ten times. Only one officer on the scene did not fire at Howard.

**40.**    After Howard succumbed to the gun shots, Defendants retreated back from the scene. One officer called out to Howard to determine if Howard survived the shots.

41.     When Howard did not respond, the officers rendered first aid and took Howard for medical treatment. Later, Howard was pronounced dead.

**(Count 1, 42. U.S.C. § 1983 - Unlawful Arrest, Excessive Force  in violation of the Fourth and Fourteenth Amendments) As to all Defendants**

42.  Plaintiff incorporates by this reference each allegation previously. made in this Complaint, as if fully set forth herein.

43.     The individual Defendants to this claim, always relevant hereto, were acting under the color of state law in their capacities as City of Phoenix  police officers and their acts and omissions were conducted within the scope of their official duties or employment.

44.     At the time of the complained of events, Howard had a clear constitutional right under the Fourth Amendment to be secure in his person  without Defendant police officers using excessive force against him because he was not armed.

45.     Howard also had a clear constitutional right under the Fourteenth Amendment to be free from  the use of excessive force and be afforded due process.  The Defendants knew or should have known these rights at the time of the complained of conduct as they were clearly established at the time.

**46.**    Defendants' slaying of  Howard, as described herein, was objectively unreasonable considering the facts and circumstances confronting them and violated the Fourth Amendment because Howard was obviously unarmed.

**47.**    Defendants' actions, to slay Howard, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights.

**48.**    Defendants Sergeant Fiola, Officers Benson, Alkarawi and Rich escalated the situation by  agitating and engaging  Howard instead of retreating to call a crisis assessment team.

**49.**    The Defendants Sergeant Fiola, Officers Benson, Alkarawi and Rich, knowing no they had no right to agitate Howard,  violated Plaintiff's constitutional rights  to kill  Howard  without legal justification as unarmed Howard posed no threat  to them.

**50.**    Defendants failed to take reasonable steps to protect Howard from excessive force despite being able to do so and therefore each are liable for the injuries and damages resulting from the unreasonable and conscience shocking slaying  by each Defendant.

**51.**    City of Phoenix  is liable for the actions of its police officers'  violation of Howard's   Fourth and Fourteenth Amendment rights for excessive force employed against Howard.

**52.**   The Defendant Officers acted pursuant to a policy of failure to train officers who and discipline officers that employ excessive force thereby emboldening the officers and other officers like them to commit constitutional violations.

**53.**   Further, the Officers' supervisors with final policymaking authority reviewed the Officers' acts in an excessive force report and ratified the officers actions  as being acceptable policing thereby creating a policy of excessive force for the City of Phoenix.

**54.**   The acts and/or omissions of the Defendants were the moving forces behind Howard's injuries.

**55.**   As a direct and proximate result of Defendants' unlawful conduct, Howard lost his life  and sustained damages and losses as described herein entitling his estate to compensatory and special damages in amounts to be determined at trial.  As further result of the Defendants' unlawful conduct, Plaintiff is entitled to general damages in amounts to be established at trial.

**56.**   In addition to compensatory, economic, consequential, and special damages, Plaintiff is entitled to punitive damages against Defendants Sergeant Fiola, Officers Benson, Alkarawi and Rich  under 42 U.S.C. § 1983, in that the Officer Defendants acted maliciously, willfully or with reckless or wanton disregard of the constitutional rights of Plaintiff.

### (Counts 2, 3 and 4, Violations of 42 U.S.C.S. § 12132,  the Rehabilitation Act,  Arizona Civil Right Act  and Failure to Train as to Defendant  City of Phoenix)

**57.**    Plaintiff incorporates by this reference each allegation previously made in this Complaint, as if fully set forth herein.

**58.**    Plaintiff was a qualified individual with a disability to wit: schizophrenia and/or major depression   who was subjected to disability discrimination by City of Phoenix police officers.

**59.**    The  Defendant  denied  Plaintiff's  reasonable  accommodation  of arranging for treatment of Howard's mental health because of Howard's disability.

**60.**    The officers' failures   resulted in Howard who was unarmed, being gunned down by  the Defendant police officers.  The Defendant City of Phoenix officers' actions were malicious and/or involved reckless, callous, and deliberate indifference to Howard's federally protected rights.

**61.**   Howard was a resident of Phoenix with a disability  and  was qualified, to receive the City of Phoenix police services (to protect lives)  and was denied these services (to protect life)  by reason of his disability.

**62.**   The Defendant police officers  failed to make a reasonable disability accommodations and had at least three opportunities to do so,  those failures cost Howard his life.

**63.**   Howard displayed evidence of his disability by  making homicidal

threats that should have been immediately alerted the police officers that they needed to get Howard mental health treatment. They had the means to do so, by employing the qualified mental health counselors that City of Phoenix keeps on staff from the moment of Howard's first 911 call and/or dispatch a crisis assessment team to Howard's residence.

64.    Defendant City of Phoenix officers failed to accommodate Howard's disability, in that the officers had both the time and opportunity to evaluate the situation and employ the accommodations above and de-escalate matters rather than enflaming them by engaging Howard.

65.    Because the Defendant Officers knew or should have known of Plaintiff's disability and did not reasonably accommodate him, the City of Phoenix is liable.

66.    Defendant City of Phoenix failed to professionally train their police officers deescalate matters for violently mentally ill individuals, such as Howard, to get individuals such as Howard to treatment.

67.    Such failure resulted in discrimination against Howard. Defendant City of Phoenix failed to properly, train its police officers to recognize symptoms of disabilities, and failed to modify its police policies, practices, and procedures to prevent discriminatory treatment of the disabled, such as Howard.

**68.**   The City of Phoenix  is a public entity charged with the responsibly under Title II of the Americans with Disabilities Act,  Rehabilitation Act and Arizona Civil Rights Act   to comply with public anti-discrimination laws, and to professionally train the Defendant police officers to reasonably accommodate the Plaintiff's disability.

### (Count 6, Negligence) as to each Defendants

**69.**   Each Defendant in their roles of  law enforcement had a duty to conform themselves to a standard of care to appropriately respond to requests for assistance  from mentally ill citizens such as Howard.

**70.**   In addition, each Defendant  had the duty of  community caretaking functions to protect the lives  of the citizens of Phoenix, to protect Howard's life.

**71.**   Defendant City of Phoenix allocated  resources and had programs such  as mental health counselors and crisis assessment teams  to address the need of citizens such as Howard.

**72.**   Each Defendant had a duty to access those mental health services for Howard on the night Defendants slayed Howard.

**73.**    Defendants breached their duties to Howard,  a mentally ill citizen  in need of the   City of Phoenix services   by denying Howard such services as described above.

**74.**   Each Defendant breach its duty to  Howard when they slayed him.

**75.**   As a direct and proximate result of Defendants' unlawful breach, Howard   suffered actual physical injures and other damages and losses as described herein thereby entitling his   estate to compensatory and general damages in amounts to be established at trial.

### (Count 7, Wrongful Death) as to all Defendants

**76.**   Plaintiff incorporates by reference each allegation previously made in this Complaint, as if fully set forth herein.

**77.**   Each Defendant had a duty to conform to the standard of care for serving  citizens with mental illness such as Howard.

**78.**   Each Defendant breach his standard of care to Howard when they killed Howard who was unarmed.

**79.**   Each Defendants' breach was causally connected to their failure to get Howard to a mental health counselor and/or facility.

**80.**   As a direct and proximate result of Defendants' failure address Howard's mental health needs, Howard died at the hands of Defendants.

**81.**   Howard  suffered actual physical  injures and other damages and losses as described herein entitling him to compensatory and general damages payable to Howard's estate in amounts to be established at trial.

**82.**  Defendant City of Phoenix  is the employer of Defendants and  is

responsible for the defendant officers' actions   under the legal theory of respondeat superior.

**(Count  8, Assault and Battery)  as to all Defendants**

83.   Plaintiff incorporates by this reference each allegation previously, made in this Complaint, as if fully set forth herein.

84.   The Defendant Officers  fired at least ten shots into  Howard placing Howard in apprehension of physical harm.

85.   The Defendant Officers inflicted pain and mortal injury to Howard's body.

86.   Defendant City of Phoenix  is the employer of Defendants and  is responsible for the defendant officers' actions   under the legal theory of respondeat superior.

87.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered actual physical injures and other damages and losses as described herein entitling his estate to compensatory and general damages in amounts to be established at trial.

**<u>DEMAND FOR TRIAL BY JURY</u>**

Plaintiff hereby demands a trial by jury on all his claims, pursuant to the U.S. Constitution's Seventh Amendment and the Federal Rules of Civil Procedure Rule 38 (a,b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff reserves the right to amend this Complaint at the time of trial to include all items of damages not yet ascertained, prays judgment against the Defendants, and each of them, as follows:

1.     An order awarding Plaintiff actual and compensatory damages from COP for violations of civil rights, disability discrimination and restitution in an amount according to proof at time of trial;

2.     An order awarding Plaintiff actual, punitive, and compensatory damages in compensation for  violation of civil rights, wrongful death, negligence, and assault and battery.   Plaintiff does not seek punitive damages against Defendant City of Phoenix;

3.     An order awarding Plaintiff's reasonable attorney's fees and costs;

4.     An order awarding Plaintiff prejudgment interest according to proof; and

5.     For such other and further relief as the Court deems just and proper.

DATED this July 8, 2022.

1

2               By: /s/ Elizabeth D. Tate

3              _____

4                  *Attorney for Plaintiff*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24